FRED W. JONES, Jr., Judge.
The Bank of Oak Grove sued Robinson on a promissory note executed by the defendant to cover his overdrafts on a margin account secured by cotton receipts. From a judgment in favor of the plaintiff for $118,205.15, the defendant appealed. The Bank of Oak Grove subsequently failed and was succeeded by the FDIC, which was substituted as a party-plaintiff in this case.
For the reasons hereinafter explained, we affirm.
Robinson was a cotton buyer in Oak Grove and had established and used a *122 “margin account” with this bank for some twenty-seven years to purchase cotton. He was an advisory board member, and a close personal friend with the bank’s president.
As a business custom, Robinson would write checks for cotton, overdraft his account, and the bank would honor all of his checks on this account. He would bring the cotton receipts evidencing his ownership of the cotton to the bank. When cotton was sold, he would apply the sale funds to the account. Each month, the total amount of overdraft was added together and multiplied by one day’s current interest. This amount was added to the account as a charge for the service rendered by the bank in allowing the large volume of overdrafts.
At the end of the bank’s audit year, Robinson would execute a promissory note — before the auditors came — for the amount of overdraft due the bank to extinguish his margin account debt to the bank. At the first of each year, he would write a check on this same margin account to cover the last promissory note, and this check would again overdraft the newly cleared margin account.
The bank’s vice-president, Mrs. Maxine Wilson, testified the charges to Robinson’s account other than interest were bank overdraft service charges ... not additional interest. Robinson was not charged $10 or $15 per overdraft check as a regular customer. All cotton brokers were charged these service charges based on the amount of the overdrafts. She testified Robinson’s monthly service charge for overdrafts had been calculated in this manner for the entire 27 year period he was in business as a cotton broker.
Robinson’s health began to fail, and he conducted little business after the fall of 1982. His principal due and the service charges and interest were combined and Robinson executed a promissory note to extinguish the debt in his margin account— as had been his business custom for a number of years.
In November 1982, he signed a promissory note for $240,000, with a 30 day period. The bank held 691 cotton receipts and/or warehouse receipts for cotton as collateral. Between the time the note was executed and January 19, 1984, some of the cotton bales were sold and the funds were applied against the note.
The principal amount due at this time was $114,286.70 — the amount owed less all sales of cotton for the time period in question. The bank assessed charges of $5,918.50 and gave Robinson a credit for his payment of $2,000 in cash. On January 19, 1984, Robinson signed a new promissory note for $118,205.15 with a collateral pledge agreement. This was the note sued upon.
An undetermined number of cotton receipts were still pledged as collateral — a number lower than the 691 listed in the collateral pledge agreement. The facts are complicated by the pledge of 691 cotton receipts, some of which represented cotton already sold and applied to the account. The bank was aware some of the cotton had been sold and had given credits for funds applied to the account. The remaining cotton was sold after the suit was initiated and the funds were applied to the account. Robinson asserts he believed he had the full 691 receipts, not an “unsold” portion only, to secure the note he signed.
The Bank of Oak Grove credited Robinson with $23,163.19 on September 5, 1984. It applied $3,611.83 to a late charge fee and $19,451.36 toward the principal owed. On December 28, 1964, the sum of $108,702.51 was due on the note.
Robinson admits he signed the note voluntarily and without duress, but he now takes the position that the charges made by the bank and consolidated into the note before he signed it constitute interest and should be reduced to comply with legal interest limits provided in both state and federal statutes.
In October 1986, the trial court noted Robinson recognized the note was made for the correct amount due. Robinson had signed the note and once again begun the new cycle that he had annually perpetuated for 27 years. The trial court rendered judgment for The Bank of Oak Grove hold- *123 mg the charges were service charges and not interest, and thus collectable.
We cannot agree the alleged service charges were not interest in light of this court’s prior decision in Succession of Drake, 359 So.2d 249 (La.App. 2d Cir.1978). While the cases are factually distinguishable, the basic reasoning is applicable to this case. However, this does not defeat the plaintiff’s claims.
For twenty seven years, Robinson used the business practice of incurring an obligation to the bank for the payment of his overdrafts by using his cotton broker’s margin account. At the end of a specified term, usually the end of the bank’s audit year, the bank would require Robinson to pay his overdrafts — -with cotton proceeds, or cash — or to change the nature of his overdrafted account to perfect the amount due the bank on the margin account. It was the intent of the bank and Robinson to eradicate the existing debt from his margin account and replace it with a clean account either by payment of the amount due or by the execution of a new debt — in this case a promissory note.
Each party clearly intended to eradicate the debt from the margin account and continue doing business for another year by applying business proceeds to cover the debt or by executing a promissory note to cover the amount of the debt that was not extinguished by business proceeds.
Robinson participated in this type of business practice — replacing his existing debt with a new obligation that included principal, interest, and other charges — for a lengthy period of time. Each time he extinguished his existing debt and replaced it with the new promissory note for an amount equal to his overdrafts and all related charges, less applied business receipts, he accomplished a novation of the prior debt into a new debt. Novation is the extinguishment of an existing obligation by the substitution of a new one. La.C.C. Art. 1879.
When Robinson executed the new note for the principal and other charges without duress and of his own free will, the usury defense was defeated. Traditionally, the general rule when this suit was tried was where interest and principal were capitalized in a new note, even though the interest included was usurious, recovery in full could be made on the new note. See La.C.C. Art. 1939 (West 1984) [La.C.C. Art. 2001 as of January 1, 1985]; La.C.C. Art. 2924; Vosbein v. Leopold, 230 La. 21, 87 So.2d 715 (La.1956). Parties to an obligation consisting of principal that is partly usurious interest and capitalized interest could agree through the execution of a new note that the entire obligation will subsequently bear interest at the rate permitted by law.
In Vosbein, the debtor executed a promissory note that included his principal obligation balance, usurious interest and $400 in cash. The debtor showed the existence of usurious interest at trial. The court held:
“Undoubtedly a portion of the $3,800 included in the $4,200 note represented usurious interest, but since this usurious interest was capitalized with a portion of the principal obligation no relief can be granted the defendant.”
See also Securities Mortgage Company, Inc. v. Triplett, 368 So.2d 480 (La.App. 1st Cir.1979).
This basic rule was followed in Paulat v. Pirello, 353 So.2d 1307 (La.1977), until the debtor stopped executing new notes and began merely making payments of interest. There, the payments of interest made after maturity that were of the same amount capitalized in the notes sued upon were deemed usurious.
Robinson continued to execute a new note to cover his total debts each year. He accomplished a novation by substituting a new obligation for a pre-existing debt.
For these reasons, the judgment of the trial court is AFFIRMED, at appellant’s cost.